## Odin Coal Company v. Effie Denman.

1. Mines and Miners—*Safety of Persons Employed in Mines—Liability of Operator.*—Under the act to provide for the health and safety of persons employed in coal mines, the owner or operator is liable for all injuries to person or property occasioned by any willful violation of the act, or willful failure to comply with any of its provisions.

2. Evidence—*Intentions of Others.*—A witness may testify as to his own intention in doing an act but it is not competent for him to testify to another's intention.

3. Practice—*Amendments Imposing Terms.*—The matter of imposing terms in cases where amendments are allowed rests in the sound discretion of the trial court, and Appellate Courts will not review the exercise of that discretion except where it clearly appears that the power has been abused.

Odin Coal Co. v. Denman.

4. VERDICTS—*When the Court Will Direct.*—Where there is no substantial evidence tending to prove a disputed and material fact necessary to a recovery, nor any reasonable inference fairly deducible from all the evidence tending to establish such fact, then it is the duty of the court to direct a verdict.

5. SAME—*When it is the Duty of the Court to Submit the Case.*—Where there is any substantial evidence tending to prove every disputed fact necessary to a recovery, or where all the evidence, together with such reasonable inferences as are fairly deducible therefrom, tend to establish every such fact, then it is the duty of the court to submit the case to the jury.

6. WILLFULNESS—*A Question of Fact.*—Where a violation of the statute is established, whether it is a willful violation must be determined by the jury from all the facts and circumstances of the particular case.

7. SAME—*Inferences from the Non-compliance with Statutory Requirements.*—Mere non-compliance with the requirements of the statute is not necessarily a willful failure to observe such requirements. A jury may be justified in regarding non-compliance with the provisions of a statute as willful violation, according to the circumstances of the case.

**Action in Case.**—Death by reason of non-compliance with the miner's act. Trial in the Circuit Court of Marion County; the Hon. WILLIAM M. FARMER, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the February term, 1899. Affirmed. Opinion filed September 5, 1899.

VANHORBECK & LOUDEN and L. M. KAGY, attorneys for appellant, contended that before a party can recover damages for an injury, even though the act done or omitted is willful, it must be shown by the proof that the injury occasioned is the natural and reasonable result of the defendnant's act or omission; in other words, the proximate cause of it. Phillips v. Dickerson, 85 Ill. 11; Mo. & Ill. Coal Co. v. Schwalb, 77 Ill. App. 595; Catlett v. Young, 143 Ill. 74; Springside Coal & Mining Co. v. Grogan, 53 Ill. App. 68.

In order to maintain an action for a willful violation of the statute, the burden is on the plaintiff to show that the violation was willful. Mo. & Ill. Coal Co. v. Schwalb, 77 Ill. App. 593.

In a case charging willful injury, there can be no recovery except upon proof that the act which caused the injury was willful. I. B. & W. R. R. Co. v. Burge, 94 Ind. 46.

When the intent is material it is proper to ask what it

was, and a direct question may be asked with what intent it was done, and the party may testify as to what his intent was. Over v. Schiffling, 102 Ind. 193; Bidinger et al. v. Bishop, 76 Ind. 255.

The word "willfully," when used in a statute, means not merely voluntary, but with a bad purpose, an intended design. Commonwealth v. Kneeland, 20 Pick. (Mass.) 220; North Carolina v. Vanderford, 35 Fed. Rep. 287; State v. Massey, 97 N. C. 465.

The word "willfully," when used to denote the intent with which an act is done, is employed in penal statutes to distinguish between acts which are intentional and by design, and those which are thoughtless and accidental. Highway Comm'rs, etc., v. Ely, 54 Mich. 180; State v. Chicago, M. & St. P. R. R. Co., 77 Iowa, 445; Commonwealth v. Williams, 110 Mass. 403.

An act may be unlawful and yet not willful or wanton. Dunlap v. The State, 9 Tex. App. 178; Thomas v. The State, 14 Tex. App. 200.

The offense, as denounced by the statute, is limited and qualified by the word "willfully," which means in legal parlance, with evil intent. The evidence measured by the above test is wholly insufficient. Yoakum v. The State, 21 Tex. App. 263.

A willful violation of the statute is a violation of its provisions knowingly and deliberately. The act must be done or omitted, must have been intended and must be of so gross a character as to amount to recklessness and to indicate a willingness to subject a party to a known and avoidable risk, but the failure to use ordinary care does not necessarily include the elements of willfulness. A charge of willfulness is not maintained by proof of mere negligence. Girard Coal Co. v. Wiggins, 52 Ill. App. 74; C., B. & Q. R. R. Co. v. Dickson, 88 Ill. 431; Peoria Bridge Co. v. Loomis, 20 Ill. 251; Catlett v. Young, 38 Ill. App. 201; 143 Ill. 74; Lake Shore & M. S. Ry. Co. v. Bodemer, 139 Ill. 606.

FRANK F. NOLEMAN and W. F. BUNDY, attorneys for appellee.

Odin Coal Co. v. Denman.

The miners' act, entitled "An act provided for the health and safety of persons employed in coal mines," among other provisions, contains the following:

"Section 6.—A sufficient light shall be furnished, at the top and bottom of the shaft, to insure as far as possible the safety of persons getting on and off the cage."

"Section 8.—Fencing Shaft. The top of each and every shaft, and the entrance to each and every immediate working vein, shall be securely fenced by gates properly protecting such shaft and the entrance thereto."

"Section 14.—Injuries. For any injury to person or property, occasioned by any willful violations of this act, or willful failure to comply with any of its provisions, a right of action shall accrue," etc. 2 Starr & Curtis Anno. St., Chap. 93, pp. 2721, 2723, 2728.

Although there may have been an attempt on the part of the defendant to fence the top of the shaft or to provide gates, unless there was a substantial compliance with the statute in such a manner as to afford the protection to the miners which the statute contemplated, the jury were warranted in finding the defendant guilty of a willful failure to comply with its provisions. Bartlett Coal & Mining Co. v. Roach, 68 Ill. 174; Catlett v. Young, 143 Ill. 74.

Although the deceased may not have been exercising ordinary care at the time he stepped off of the cage, yet if he would not have been injured thereby but for the willful failure of appellant to properly protect its shaft by gates, the appellee is not precluded from recovery. Bartlett Coal & Mining Co. v. Roach, 68 Ill. 174; Catlett v. Young, 143 Ill. 74; Litchfield Coal Co. v. Taylor, 81 Ill. 595.

If the defendant knew that it was its duty to fence the top of its shaft by gates, properly protecting the same, and to provide a sufficient light at the top of its shaft to insure as far as possible the safety of persons getting on and off the cages at the top of the shaft, and being conscious of its duty did not perform it, the jury were warranted in finding a willful failure in that regard. Catlett v. Young, 143 Ill. 74; Bartlett Coal & Mining Co. v. Roach, 68 Ill. 174; 16 Am. & Eng. Ency. Law, 392; L. S. & M. S. Ry. Co. v. Bodemer, 139 Ill. 606.

The word "willful" does not imply malice. Such a meaning is beyond its common or its legal import. State v. Massey, 97 N. C. 465; State v. C., M. & St. P. Ry. Co., 77 Ia. 542; Catlett v. Young, 143 Ill. 74.

It is not error to refuse to allow the defendant to testify as to his intention in doing a certain act, when there is no particular intent alleged, or necessary to be proved. Every person is charged with the knowledge of the natural consequences of his acts. Wohlford v. The People, 148 Ill. 296; Spaulding v. The People, 172 Ill. 40.

Even where a particular intent is charged, and necessary to be proved, if the defendant states all the circumstances, and the details of the transaction, then it is not reversible error to refuse to allow him to state what his intention was. Wohlford v. The People, 148 Ill. 300.

Where no particular intent is charged, and none necessary to be proved, any secret intention or determination of a party not communicated to others can not affect his act. Gate v. Ins. Co., 41 N. H. 174; Thompson on Trials, 345; Whisnant v. State, 71 Ala. 383; McCormick v. Joseph, 77 Ala. 236.

One can not testify as to the intention of another person. Cihak v. Klekr, 117 Ill. 643.

MR JUSTICE CREIGHTON delivered the opinion of the court.

This was an action on the case in the Circuit Court of Marion County, by appellee against appellant; to recover damages sustained by her as a result of the death of her husband in appellant's coal mine. Trial was by jury. Verdict and judgment in favor of appellee for $2,000.

Appellant had operated its mine for some twelve years or more. The shaft consisted of two compartments; was seven hundred feet deep; was operated by steam, and cages were lowered and hoisted through the shaft to carry the men, supplies and product into and out of the mine. The top works extended upward above the surface of the ground about twenty feet, to what is called the tipple house, where were constructed the chutes for unloading the coal brought out of the mine.

Odin Coal Co. v. Denman.

The top works consisted of a frame work of timbers to support the tipple house. There was a fence with two gates in it around the shaft at the ground or surface landing, but it was about ten feet away from the shaft. The fence and gates enclosed an area much larger than the shaft. There was neither fence, gates nor other enclosure immediately around the mouth of the shaft. There was in use at this point an appliance consisting of some boards nailed together with cross-pieces, like a door—by some of the witnesses called a door. This was furnished for the purpose of keeping the men that dumped the water from getting wet, and it was sometimes set up by the men when at work around the mouth of the shaft "to form a kind of protection" to keep them from falling in. No lights were maintained at this landing, but the fireman was instructed by appellant to light the men on and off the cage with a lantern. This duty he sometimes performed and sometimes neglected, but the evidence does not show that appellant was notified of such neglect. The landing up in the tipple house was properly fenced and lighted, but its fence furnished no protection at the surface landing and its lights shed no light there.

Appellant worked a double shift of men, one known as the day shift and the other as the night shift. The day shift, in going to and returning from their work, got on and off the cages in the tipple house landing, but the night shift got on and off at the lower surface landing. The night shift consisted of from fifteen to twenty men, who went to work in the evening at six o'clock and returned from their work in the morning at about half-past five o'clock. Appellee's husband was twenty-six years old; had worked for appellant in that mine for about eight years; was sober, able-bodied and industrious; worked on the night shift and earned $2.25 per night. He had gone into the mine to work, as usual, on the evening of January 25, 1898, and had worked during the night. On the morning of the 26th, about half-past five o'clock, before it was yet daylight, he, with one companion, entered the cage at the bottom of the shaft, to be hoisted out of the mine. His companion's light was out

when they entered the cage, and, as they ascended, the current of air caused by the rapid ascent put his light out, as usual. As the cage approached the lower landing, where the night men usually got off, its speed was slackened so that when it came to the landing it was moving very slowly; he stepped off—the cage had passed the landing—he fell into the shaft to the bottom, and was dead. There was no light at the landing and it was so dark he could not see.

The verdict of the jury finds appellant "guilty under the first and fourth counts of the declaration." The first count charges willful failure on the part of appellant to keep a sufficient light at the top of the shaft, and the fourth count charges a willful failure to securely fence the top of the shaft by gates properly protecting the top and entrance. These two counts charge the willful failure to perform duties imposed by statute. The statute reads:

" Section 6.—A sufficient light shall be furnished at the top and bottom of the shaft to insure, as far as possible, the safety of persons getting on and off the cage.

Section 8.—Fencing shaft. The top of each and every shaft, and the entrance to each and every immediate working vein, shall be securely fenced by gates properly protecting such shaft and the entrance thereto. * * *

Section 14.—Injuries. For any injury to person or property occasioned by any willful violations of this act, or willful failure to comply with any of its provisions, a right of action shall accrue." * * *

It is urged by counsel for appellant that the court erred in the admission of evidence on behalf of appellee, and complaint is made of the item about the existence and use, about the shaft, of the appliance the witnesses called the door, and of the fact that the court admitted evidence to show that the fireman did not appear at the landing with his lantern on the morning of the injury. This evidence simply discloses in part the environment which, in an action on the case, is usually entirely proper. It was the duty, under the statute, of appellant to properly protect the entrance to the shaft, and it was not error to show the entire condition there. It was also appellant's duty to make suitable pro-

vision for furnishing sufficient light at the top of the shaft, and it was not error to show what means was employed to that end and how the means met the requirements. They also complain of the action of the court in refusing to allow appellant to prove that appellee's deceased husband had on occasions during his lifetime jumped off a moving cage; that he was in the habit of jumping off the cage while it was in motion. This was not error. The question of contributory negligence is not involved in the issues. During the examination of Mr. Morrison, president of appellant company, counsel stated to the court :

" We offer to prove by this witness that they have in good faith honestly attempted in every way to comply with all the provisions of the statute of this State in relation to miners, and have no intent to evade the provisions of the statute in any way."

The Court: " It is competent for you to prove that, but not by asking the witness what his intention was in doing what he did do, or omitting to do what he did not do."

Mr. Kay: " We offer to prove by this witness what the intention of the mine owners and operators and officers was in relation to a compliance with the provisions of the statute of this State in relation to miners."

The Court: " It is not competent for the witness to state what his intention was."

It is true, as contended by counsel, since the statute making parties competent witnesses to testify in their own behalf was enacted, that in all cases where intent is in issue, a party to the suit may testify directly to his intent, and in determining that issue the jury should consider the party's statement as to his own intent, together with all the other evidence, and all the facts and circumstances in evidence in the case. But Mr. Morrison is not a party to this suit. He was only one of many agents of appellant. In giving his testimony he was a mere witness. In Cihak v. Klekr, 117 Ill. 643, it is held that it is not competent for a witness to testify to another's intention. If we shall concede that an officer or agent of a corporation is competent to testify directly to the intent of the whole corporation, still the error would not, under the facts of this case, be of sufficient

gravity to call for a reversal. Appellant was allowed the fullest liberty to prove all the facts, circumstances and conditions. In Wohlford v. The People, 148 Ill. 296, Wohlford, when on trial for an assault with a deadly weapon with intent to inflict a bodily injury, while testifying in his own behalf, was asked why he used the ax in the manner he did, and whether, in using it, he intended to do the prosecuting witness any bodily injury. The trial court sustained an objection to the question and refused to allow it answered. The Supreme Court says this was error; that the defendant ought to have been allowed to answer the question, but that inasmuch as he was allowed to state fully what occurred, and all the circumstances surrounding the transaction, the ruling of the court was not reversible error.

A witness who had stated that he had followed mining off and on for twenty-five years, and had worked for appellant for the last ten years, was asked: "Q. Now you may state to the jury what protection or fence they kept, if any, and gates, at the ground landing. Ans. From what experience I have had in coal mines, I have never seen a gate at the ground landing." An objection was sustained to the answer, and the court ordered it stricken from the record. Appellant's counsel insist this was error. It does not appear so to us. The answer was not responsive to the question, and was not relative to any issue in the case.

Complaint is made of the giving of appellee's first and second instructions, and of the refusing and modifying of a number asked by appellant. Those given on behalf of appellee set out the statutory duty and liability of the operators of a coal mine, as to lighting and fencing the top of the shaft, substantially in the language of the statute. The objections urged against the first of these are, to our minds, wholly without force. It is true, as to the second, that, in one particular, it is slightly variant from the letter of the evidence, but in no substantial respect. It is wholly immaterial whether the cage was exactly even with the lower landing or had passed somewhat above it when appellee's husband, in the darkness, attempted to alight.

Odin Coal Co. v. Denman.

Appellant asked twenty-six separate instructions, some of which were refused, some modified and some given as asked. We do not deem it important to discuss in detail the modified and refused instructions. The principal questions covered by them will be, to some extent, treated before we conclude this opinion. The instruction, as given on behalf of appellant, fully cover every material issue in the case and state the law as favorably to appellant as in our judgment is warranted.

It is insisted that the court erred in refusing to submit to the jury the second and fourth special interrogatory asked by appellant to be submitted. Neither of these interrogatories call for a finding as to any particular material fact involved in any material issue in the case.

After appellant's testimony was all in, her counsel, by leave of court, amended the declaration in some slight particulars to make it conform to the evidence. Appellant's counsel moved the court to impose terms. The court denied the motion, and it is contended this was error. The matter of imposing terms, in such cases, rests in the sound discretion of the trial court, and appellate courts will not review the exercise of that discretion except where it clearly appears that the power has been abused. Such abuse does not appear in this case.

At the close of the evidence for appellee, appellant's counsel moved the court to instruct the jury to find appellant not guilty. The court denied the motion. At the conclusion of all the evidence appellant's counsel renewed their motion to instruct the jury to find appellant not guilty, and the court again denied the motion. This is assigned as error, and the greater part of the able and exhaustive brief and argument, presented by appellant's counsel, is directed to this point in the record. They say, as to the right of recovery in this case, two principal questions arise: Were the statutory provisions violated by appellant in the particulars alleged in the first or fourth counts of the declaration, and, if so, were such violations willful?

The law is now well settled in this State, that where

there is no substantial evidence tending to prove any disputed material fact necessary to recovery, nor any reasonable inference fairly deducible from all the evidence tending to establish such fact, then it is the duty of the court to direct a verdict; and where there is any substantial evidence tending to prove every disputed material fact necessary to a recovery, or where all the evidence, together with such reasonable inferences as are fairly deducible therefrom, tend to establish every such fact, then it is the duty of the court to submit the case to the jury.

It is urged, first of all, that the landing in the tipple house was "the top of the shaft," within the meaning of the statute, and as it is undisputed that lights were furnished in the tipple house, and that that landing was fenced by gates, it must follow that there was no violation of the statute, as charged in the counts upon which the verdict was returned and judgment rendered. We are of opinion that what constitutes the top of the shaft is, under the evidence in this case, more a question of fact than of law. We are not able to say, as pure matter of law, that a landing within the top works of a mine, above the surface of the ground, where a great number of employes of the mine, in the night time, in the regular discharge of their employment, habitually enter the shaft to go into the mine, and where they leave the shaft in coming out of the mine, is no part of the top of the shaft which the statute requires to be furnished with sufficient light and to be securely fenced by gates. Neither are we able to say, as pure matter of law, under the evidence in this case, that merely ordering a fireman to attend and light the men onto and off the cage with a lantern is furnishing sufficient light, nor that maintaining a fence inclosing such an area as to furnish no protection for those entering the shaft or leaving it, is securely fencing by gates.

It is contended that even if there was a violation of the statute in the respects charged, such violation is not willful. In support of this contention appellant's counsel point out that it was the duty of the State mine inspectors to inspect the mine and see that every necessary precaution was taken

to insure the safety of the miners, and to see that the provisions of the mining laws of the State were faithfully obeyed, and that the evidence shows that the mine had been often inspected, and that no complaint had been made to appellant by the inspectors concerning the matters charged. And counsel say :

" We contend   *   *   *   that where fair-minded and prudent men may differ as to the necessity of doing or not doing an act or duty imposed by law, if in good faith, there can be no willfulness."

We can not hold that men's opinions as to the necessity of obeying the law can avail them as a defense when charged with its violation. Neither can we hold that the fact that the State mine inspector did not make complaint of the condition of the mine, conclusively establishes that appellant's violations of the statute were not willful.

Willfulness is as difficult to define as negligence. When a violation of the statute is established, then whether it is a willful violation must be determined by the jury, from all the facts and circumstances of the particular case. In Springside Coal Mining Co. v. Grogan, 53 Ill. App. 60, it is said :

" Mere non-compliance with the requirements of the statute is not necessarily a willful failure to observe such requirements. A jury might be justified in regarding non-compliance as willful, from circumstances."   *   *   *

Bartlett Coal Mining Co. v. Roach, 68 Ill. 174, was a case wherein the appellant was sued to recover damages for the death of the appellee's husband, alleged to have been caused by the willful failure to fence the shaft. In that case it was held that the appellant was presumed to know the law, " and if the company was not prepared to comply with its provisions, it was its duty to suspend operations in the mine until the necessary preparations could be made, and its failure to do so must (may) be regarded as willful. The company continued to operate its mine in defiance of the law, and must bear the consequences."

Finally, it is urged that the failure of appellant to comply

with the requirements of the statute was not the proximate cause of the death of appellee's husband; that stepping off the cage while it was in motion was a reckless act on his part, and that such act was the proximate cause of his death. In cases of this character the doctrine of contributory negligence has no place.    In Catlett v. Young, 38 Ill. App. 198, it is held, that recklessness of his own safety on the part of the injured party will not relieve the mine operator from liability under this statute.

We find no substantial error in this case.    The judgment of the Circuit Court is affirmed.