THOMAS CHIZMAR, a Minor, by Thomas Chizmar, His Father and Next Friend, Plaintiff-Appellant, v. THE CITY OF VIRDEN *et al.*, Defendants-Appellees.

Fourth District   No. 4—87—0016

Opinion filed November 12, 1987.

Steven J. Rosenberg, P.C., of Chicago, for appellant.

Heyl, Royster, Voelker & Allen, of Springfield (Frederick P. Velde, of counsel), for appellee Louis Marsch, Inc.

JUSTICE KNECHT delivered the opinion of the court:

Thomas Chizmar (plaintiff), by his father and next friend, Thomas Chizmar, appeals the denial of his motion for new trial or judgment notwithstanding the verdict as to count V of his complaint against Louis Marsch, Inc. (Marsch), alleging violations of sections 2 and 4 of "An Act to protect workmen and the general public from injury or death during construction or repair of bridges and highways ***" (Act) (Ill. Rev. Stat. 1977, ch. 121, pars. 314.2, 314.4) (commonly referred to as the Road Construction Injuries Act). He brought a 10-count action against the city of Virden (city), Marsch, the contractor, and Stephen Clark (Clark), the truck driver. Clark died March 15, 1982, and his estate was substituted as a defendant. Following a jury trial, a verdict was rendered in favor of Marsch and against the plaintiff as to count V, and for all the defendants and against the plaintiff on the remaining counts. Plaintiff appeals the verdict as to count V only. We affirm.

Plaintiff, seven years old at the time of the occurrence, was injured August 13, 1979, while riding his minibike near the intersection of Sunset Drive and Meadow Street in Virden. Marsch was engaged in applying liquid asphalt and crushed stone on Sunset pursuant to its resurfacing contract with the city. The job required an oil truck to

spread liquid asphalt on the road. A rock spreader, loaded by a dump truck, distributed rock evenly over the sprayed area. A roller followed up to tamp the crushed rock.

Tim Snow, an employee of the Virden sanitary department working at the resurfacing operation, was the only eyewitness. He testified plaintiff had been riding a minibike in the yards and ditches along Sunset and in the street itself that morning. At about 1:45 p.m., when plaintiff rode near Snow's truck, Snow yelled at plaintiff to play elsewhere.

At the time of the occurrence, a 13-ton Marsch dump truck loaded with rock was backing up on Sunset toward the oil truck. Operated by Clark, the dump truck traveled south at two to three miles per hour. The evidence conflicts as to whether plaintiff rode south on Sunset beside the Marsch vehicle, turned right behind what he thought was a stationary truck, and was struck by a bar extending from the truck's rear, or whether he traveled south on Sunset, made a loop at the intersection to proceed west on Meadow and fell under the truck after his bike slid. It is undisputed plaintiff fell and the truck backed up over him. He rolled lengthwise under the truck in a northerly direction. As he raised his left foot to push himself out from under the truck, his right foot was run over by the right rear inside dual wheel. Plaintiff's right foot and leg were subsequently amputated approximately a third of the way between the ankle and the knee.

Paul Vocks, Marsch's president, testified as an adverse witness pursuant to section 2—1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1102). He stated no flagmen, warning lights, or barricades were used by Marsch on the date of the accident. The truck had no audible backup warnings.

John Lewis, a city employee on the site at the time of the accident, testified that in the six years Marsch had performed street repair for the city, the company had never used barricades or flagmen. He stated neither was necessary because the job was moving.

Plaintiff claims failure to use warning devices around the resurfacing operation violated the Act and proximately caused the plaintiff's injuries. Defendant maintains the jury's verdict in its favor was not against the manifest weight of the evidence.

■■ ■ On a motion for a new trial, the court will weigh evidence, set aside the verdict, and order a new trial if the verdict is contrary to the manifest weight of the evidence. (*West v. City of Hoopeston* (1986), 146 Ill. App. 3d 538, 497 N.E.2d 170.) A verdict is against the manifest weight of the evidence when an opposite conclusion is clearly evident. (*Nunley v. Village of Cahokia* (1983), 115 Ill. App. 3d 208,

450 N.E.2d 363.) In determining whether a jury's verdict was against the manifest weight of the evidence, the inquiry on appeal is whether the result reached is reasonable on the facts and the evidence, not whether other conclusions are possible. *Lynch v. Board of Education* (1980), 82 Ill. 2d 415, 423, 412 N.E.2d 447, 454.

The version of section 2 of the Act in effect at the time of the occurrence provided:

"At all times during which men are working where one-way traffic is utilized, the contractor or his authorized agent in charge of such construction will be required to furnish no fewer than two flagmen, *one at each end of the portion of highway or bridge on which only one-way traffic is permitted, and at least 100 feet away from the nearest point of the highway or bridge on which only one-way traffic is safe and permitted.* The flagmen shall be equipped with safe, suitable, and proper signal devices as prescribed in the Safety Code published by the Department of Transportation, and shall so use such devices as to inform approaching motorists to stop or proceed. In addition, safe, suitable, and proper signals and signs as prescribed in the Manual of Uniform Traffic Control Devices for Streets and Highways published by the Department of Transportation shall be so placed as to warn approaching persons of the existence of any portion of highway or bridge upon which only one-way traffic is safe and permitted. At bridge construction or bridge repair sites, where one-way traffic is utilized, traffic control signals conforming to the Manual may be installed and operated in lieu of, or in addition to, flagmen." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 121, par. 314.2.

Section 4 of the Act stated:

"Any portion of highway or bridge which is closed to all traffic shall be marked at each place where vehicles have accessible approach to such portion of highway or bridge, and at a sufficient distance from the closed portion of such highway or bridge shall be marked with an adequate number of safe, suitable, and proper warning signs, signals or barricades as set forth in the Manual of Uniform Traffic Control Devices for Streets and Highways published by the Department of Transportation so as to give warning to approaching motorists that such portion of bridge or highway is closed and unsafe for travel." Ill. Rev. Stat. 1977, ch. 121, par. 314.4.

Section 6 of the Act stated: "Any contractor *** who knowingly or wilfully violates any provision of this Act, shall be responsible for

any injury to person or property occasioned by such violation \*\*\*."
Ill. Rev. Stat. 1977, ch. 121, par. 314.6.

■■ ■ Generally, violation of a statute designed to protect human life or property is *prima facie* evidence of negligence. (*Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 356 N.E.2d 93.) The legislature intended to impose strict liability on those who violate the Act. (*Vegich v. McDougal Hartmann Co.* (1981), 84 Ill. 2d 461, 419 N.E.2d 918.) In order to recover, plaintiff must show violation of the statute proximately caused his injury and the statute was intended to protect a class to which he belongs against the kind of injury he suffered. *Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 79, 117 N.E.2d 74, 78; *Eldridge v. Eli Lilly & Co.* (1985), 138 Ill. App. 3d 124, 128, 485 N.E.2d 551, 553.

We need not determine whether plaintiff was within the class of persons to be protected from the harm the legislature intended to prevent, as we conclude plaintiff did not establish, to the jury's satisfaction, that any violation of the Act was the proximate cause of his injury.

The evidence disclosed no warning signs were erected around the construction site, in violation of section 4 of the Act. However, plaintiff's expert witness, Robert Seyfried, stated during trial the presence of signs would not have prevented this accident. Seyfried testified the presence of flagmen would have altered the outcome by directing plaintiff away from the operation and by shouting a warning to the truck driver.

Section 2 of the statute requires flagmen at either end of the operation. Testimony at trial clearly indicated the injury to plaintiff occurred when plaintiff attempted to cut in back of a dump truck which was backing up toward another vehicle in the *middle* of the resurfacing operation. The statute does not require flagmen in this location. Although plaintiff's expert testified flagmen were required at the intersection, plaintiff has shown no statutory authority for this claim.

■ No flagmen were employed by the contractor, and this violates the Act. However, there is no showing by plaintiff that failure to employ flagmen was the proximate cause of plaintiff's injury. While Seyfried testified flagmen would have had time to warn the truck driver once the plaintiff's presence behind the truck was discovered, Snow testified only three seconds elapsed from the time he saw plaintiff turn behind the truck until the accident occurred. There was ample evidence from which the jury could conclude no proximate cause had been established. Since an opposite conclusion was not clearly evident, the jury's verdict was not against the manifest weight of the ev-

idence. The trial court correctly denied plaintiff's motion for a new trial.

Judgments notwithstanding the verdict should be entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) In view of our finding no proximate cause was established by plaintiff, the evidence fails to meet this standard.

The order of the circuit court of Macoupin County is affirmed.

Affirmed.

GREEN and LUND, JJ., concur.